■ SIXTY SUTTON CORP. et al., Plaintiffs, v ILLINOIS UNION INSURANCE Co. et al., Defendants, and TOWER BUILDING SERVICES, INC., Respondent. ILLINOIS UNION INSURANCE Co., Third-Party Plaintiff-Respondent, v UTICA FIRST INSURANCE COMPANY, Third-Party Defendant-Appellant. [825 NYS2d 46]—

Order, Supreme Court, New York County (Karla Moskowitz, J.), entered October 24, 2005, which denied third-party defendant Utica First Insurance Company's motion pursuant to CPLR 3211 (a) (1) and (7) to dismiss the third-party complaint and for summary judgment pursuant to CPLR 3211 (c), unanimously reversed, on the law, with costs, the motion to dismiss pursuant to CPLR 3211 (a) (1) granted, a declaration issued that Utica First Insurance Company has no obligation to defend or indemnify Tower Building Services, Inc. in the underlying action, and the third-party complaint dismissed. The Clerk is directed to enter judgment accordingly.

Julio Yadaicela was injured while doing construction work at a building owned by Sixty Sutton Corporation and managed by Goodstein Management LLC. He brought an action against Sixty Sutton and Goodstein. They subsequently brought a third-party action against Tower Building Services, Inc., the general contractor for the construction project, and its insurance carrier, Illinois Union Insurance Company.

Yadaicela had worked for Jerez Renovations, a subcontractor of Tower. Jerez was insured by Utica First Insurance Company. In a letter dated November 18, 2004, Illinois demanded that Utica defend and indemnify Tower in the underlying personal injury action. That letter also stated that the contract between Tower and Jerez contained an indemnification provision, and that a certificate of insurance was issued to Jerez, listing Tower as an additional insured under Jerez's policy with Utica.

Utica responded to both Tower and Illinois on January 3, 2005. It stated that its policy with Jerez did not require it to provide coverage for any claims arising out of Mr. Yadaicela's accident. Utica cited the "Employee Exclusion" in the policy, which provides:

"This insurance does not apply to:

*"bodily injury to any employee of any insured . . . if such claim for bodily injury arises out of and in the course of his/her employment* or retention of such contractor by or for any insured, for which any insured may become liable in any capacity" (emphasis supplied).

Utica also added that Tower was not a named additional insured under Jerez's policy. Further, Utica informed Illinois that Tower does not fall within the class of entities included in the section of the Utica policy governing "blanket additional insured[s]." That section includes "[a]ny person or organization whom [Jerez is] required to name as an additional insured on this policy under a *written contract or written agreement*" (emphasis supplied). Utica informed Illinois that nothing in Jerez's contract with Tower required it to procure insurance in favor of the general contractor.

Illinois commenced this action, alleging that Utica's denial of coverage was untimely and improper. It sought a declaration that Utica was required to defend and indemnify Tower in the underlying action. In lieu of interposing an answer, Utica moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7) for failure to state a claim. Utica also requested that the court treat the motion as one for summary judgment pursuant to CPLR 3211 (c), and that it issue a judgment in Utica's favor.

In support of the motion, Utica submitted a copy of the insurance policy, and an affidavit from one of its claims representatives, which stated that Tower was not an insured or an additional insured under the Utica policy. The claims representative also noted that the "employee exclusion" in the Utica policy precluded coverage for Mr. Yadaicela's injuries.

Illinois opposed the motion, and sought further discovery. It claimed that its copy of the Utica policy was not correct or complete. Illinois reiterated that a certificate of insurance indicated that Tower was an additional insured under the Utica policy. Tower also opposed the motion, adopting Illinois' arguments, and relying upon a "blanket endorsement" in the Utica policy, which provided that an insured included "any person or organization whom you are required to name as an additional insured on this policy under a written contract or agreement."

In reply, Utica contended that Tower was not insured under

its policy with Jerez. It noted that Tower misquoted the language of the blanket endorsement, which requires a *"written contract or written agreement"* (emphasis supplied). Utica also emphasized that the employee exclusion in the Utica policy precluded coverage to both Jerez and Tower for Mr. Yadaicela's injuries. It confirmed that Tower's contract with Jerez did not require Jerez to procure insurance coverage for Tower, and it denied that its disclaimer was untimely.

The IAS court denied the motion on the ground that it was premature. The court also found an issue as to whether Utica had attached a complete and correct copy of the policy to its motion papers. We reverse.

Initially, Utica did not waive its right to disclaim coverage, nor was its disclaimer untimely pursuant to Insurance Law § 3420 (d). Because Illinois was requesting defense and indemnification from a co-insurer, the requirements of section 3420 (d) are inapplicable (*see AIU Ins. Co. v Investors Ins. Co.*, 17 AD3d 259 [2005]). In addition, Illinois' agent contacted Utica on November, 22, 2004, and Utica disclaimed coverage on January 3, 2005, five days after it confirmed, following an investigation, that Mr. Yadaicela was employed by Jerez. During the six weeks between notice of the claim and Utica's disclaimer, Illinois continued to provide for Tower's defense in the underlying lawsuit. Thus, there was no evidence of prejudice to Illinois.

On the merits, the documentary evidence conclusively established that Tower is not insured under the Utica policy (CPLR 3211 [a] [1]). Illinois had the burden of establishing that Jerez had procured coverage for Tower, and it failed to do so (*Moleon v Kreisler Borg Florman Gen. Constr. Co.*, 304 AD2d 337, 339 [2003]). The Utica insurance contract, a copy of which was annexed to its motion, and reproduced in full in the record on appeal, belies Illinois' claim that it did not receive a complete or correct copy of the policy. Notably, neither Illinois nor Tower contends that the document in the record is not correct or complete.

The four corners of an insurance agreement govern who is covered and the extent of coverage (*Stainless, Inc. v Employers Fire Ins. Co.*, 69 AD2d 27, 33 [1979], *affd* 49 NY2d 924 [1980]). In addition, where a third party seeks the benefit of coverage, the terms of the contract must clearly evince such intent (*Stainless, supra*). Here, the unambiguous language of the Utica policy comports with Utica's position that Tower is not covered, either as a named or additional insured under the policy. Given that the employee exclusion exempts Utica from providing coverage to Jerez for Mr. Yadaicela's accident, Utica could not have been

required to defend or indemnify Tower for that same claim (*see Moleon*, 304 AD2d at 339-340; *and see United States Underwriters Ins. Co. v 614 Constr. Corp.*, 142 F Supp 2d 491, 494 [2001] [claim precluded by employee exclusion], *affd* 23 Fed Appx 92 [2002]). Moreover, the certificate of insurance's reference to Tower is insufficient to confer coverage where the insurance policy itself does not cover the company (*Moleon, supra* at 339; *Glynn v United House of Prayer For All People*, 292 AD2d 319 [2002]; *American Motorist Ins. Co. v Superior Acoustics*, 277 AD2d 97, 98 [2000]). Concur—Mazzarelli J.P., Sweeny, Catterson, McGuire and Malone, JJ.